# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

GARY FREW,                                   :

     Plaintiff,                          :
                            Case No. 3:13cv00091

 vs.                                         :

                            District Judge Walter Herbert Rice
CAROLYN COLVIN,                              :      Chief Magistrate Judge Sharon L. Ovington
Acting Commissioner of the Social
Security Administration,                     :

     Defendant.                          :

_____

# REPORT AND RECOMMENDATIONS[1]

_____

## I.    <u>Introduction</u>

      Plaintiff Gary Frew suffers from degenerative disc disease; arthritis in his back, legs, and feet; depression; and memory loss.  (*PageID#* 266).  He applied for Disability Insurance Benefits in March 2009 at age 54, but the Social Security Administration concluded that he was not under a benefits-qualifying disability.  The denial was based mainly on Administrative Law Judge Paul R. Armstrong's determination that Plaintiff could still perform his past job (past relevant work) as a customer service worker.

      Plaintiff now challenges the ALJ's decision, particularly his evaluation of, and reliance on, opinions presented by non-treating medical personnel.  The case is before the

_____

    [1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum

in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), the administrative record (Doc.

#6), and the record as a whole.

This Court has jurisdiction to review the ALJ's non-disability decision.  *See* 42

U.S.C. §405(g).

## II.    Background

### A.      Plaintiff and his Testimony

Plaintiff has a high school education with an additional year of college.

(*PageID*## 273).  He has worked as a custodian, customer service representative, real

estate agent, and security guard.  (*PageID*## 276).

During the ALJ's hearing, Plaintiff testified that his last two customer-service jobs

involved talking with customers on the phone, handling their problems, and taking or

fixing their orders.  (*PageID*## 110-11).  He testified that he found this work stressful.

(*PageID*# 111).  The last couple years he was working, he felt tense and would "be

talking to someone and everything would just go blank.  I would forget everything."

(*Id.*).  He had trouble meeting productivity levels because his mind would go blank, and

he needed to interrupt customer calls for help.  (*PageID*# 111-12).  He also testified that

he could no longer physically do the job because he could not sit long enough without

back pain.  He attempted to relieve his sitting pain by bringing his own chair to work and

sitting in it, but the "pain was still hitting [him]."  (*PageID*# 112).  He explained, "I'd be

just in the middle of a phone call with a customer, and ... it would feel like an electric shock would hit me in the middle of my back.  It'd go down my leg.  It'd be in my foot.  Sometimes, it'd feel like my foot was crushed...."  *Id*.

Plaintiff estimated that he can stand for ten minutes before needing to sit down.  After standing for ten minutes, he would start getting mid-back pain, which shoots down both legs.  (*PageID* # 117).  He normally lays down for two to three hours a day due to pain.  (*PageID* # 118).

Plaintiff further stated that he experiences severe limitations in his memory and concentration that preclude him from performing work.  (*PageID* # 118-19).  He also testified that his lower back pain substantially reduces his ability to stand for prolonged periods.  (*PageID* # 119).

When asked why he could no longer work (beginning in 2009), Plaintiff answered:

> [T]he memory is so bad now.  The concentration is so bad.  The – and the pain is on top of that, because I never know – I was – all I did, the other day, was start to put a dish in a cupboard.  And the pain hit me so hard, in the center of my back, and I had to grab the counters to keep from ending up on the floor.  And I never know when that's going to happen.

(*PageID* # at 119).

### B.    Relevant Medical Opinions[2]

_____

[2] The record contains additional evidence including records from Plaintiff's previous employer GE Card Services dated January 24, 2005 through July 26, 2006.  (*PageID* ## 330-428). That evidence was not before the ALJ.  Rather, Plaintiff submitted it to the Appeals Council.  However, since the Appeals Council denied plaintiff's request for review, that evidence is not a part of the record for purposes of substantial evidence review of the ALJ's decision.  *Cline v. Commissioner of Social Security,* 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted). Review of the Commissioner's decision is limited to

Plaintiff relies on the opinion of his treating primary-care physician, Robert Gardner, D.O. Dr. Gardner began treating Plaintiff in 2002. (*PageID#* 528). He treated Plaintiff for chronic recurrent low-back pain, bilateral radiculopathy, degenerative joint disease, degenerative disc disease of the lumbar spine, generalized arthritis, hypertension, hyperlipidemia, and depression. (*PageID#* 529).

In April 2011, Dr. Gardner completed a medical assessment of Plaintiff's ability to do work-related activities. (*PageID##* 523-27). He opined that Plaintiff could frequently lift/carry only two to four pounds; stand/walk for 30 minutes out of an eight-hour workday because of low-back pain and radicular (nerve) pain and paresthesia (lack of sensation) into his feet. (*PageID#* 524). He could stand/walk uninterrupted for ten minutes; sit for two to four hours out of eight (uninterrupted for one to two hours). (*Id.*). He could not bend and could never climb, stoop, crouch, kneel, or crawl. He could occasionally balance. (*PageID#* 525). He had paresthesia in his fingers and feet. He was restricted in his ability to push/pull. *Id.* He was restricted from heights, moving machinery, chemicals, temperature extremes, vibrations, dust, noise, fumes, and humidity. (*PageID#* 526). Dr. Gardner opined that Plaintiff could not perform sedentary work because he cannot sit, noting that Plaintiff lost his previous job due to his inability to sit. (*PageID#* 527).

---

the record made before the ALJ. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007).

Dr. Gardner also completed interrogatories in April 2011.  (*PageID*# 528-37).  He opined that Plaintiff "cannot reasonably & consistently perform even the most sedentary activity (hx. [history] of failure at that type of job.[)]."  (*PageID*# 530).  Plaintiff's physical condition was aggravated by his psychological condition.  (*PageID*# 530).  According to Dr. Gardner, Plaintiff could not be prompt and regular in attendance; respond appropriately to supervisors, co-workers, and customary work pressures; withstand the pressure of meeting normal standards of work productivity and work accuracy without significant risk of physical or psychological decompensation or worsening of his physical and mental impairments; sustain attention and concentration on his work to meet normal standards of work productivity and work accuracy; understand, remember, and carry out simple work instructions without requiring very close supervision; demonstrate reliability; maintain concentration and attention for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruption from psychologically and/or physically based symptoms and perform at a consistent pace without unreasonable numbers and length of rest periods; respond appropriately to changes in a routine work setting; get along with co-workers or peers without unduly distracting them or exhibiting behavior extremes; sustain ordinary routine without special supervision; work in coordination with, or in proximity to, others without being unduly distracted by them; and accept instructions and respond appropriately to

5

criticism from supervisors.  (*PageID*## 531-36).  Dr. Gardner opined that Plaintiff was markedly limited in his daily activities and social functioning, and had marked deficiencies in concentration, persistence, or pace.  (*PageID*## 536-37).

Dr. Gardner also completed a medical assessment of Plaintiff's mental/emotional abilities to do work-related activities.  (*PageID*# 538-40).  He indicated that Plaintiff had poor to no ability to follow work rules; interact with supervisors; deal with work stresses; function independently; maintain attention/concentration; understand, remember, and carry out detailed and complex job instructions; and demonstrate reliability.  (*PageID*## 538-40).

The Commissioner relies on the opinion of Damian Danopulos, M.D. who evaluated Plaintiff on behalf of the Ohio Bureau of Disability Determination in September 2009.  (*PageID*## 451-59).  Dr. Danopulos noted that Plaintiff presented with "four major complaints which prevent him from working: 1) low back pain radiating to both legs and feet, with numbness in the right-big toe, 2) hypertension, 3) overweight, and 4) depression with anxiety."  (*PageID*# 451).

Dr. Danopulos reported that Plaintiff provided a "reliable history" of his present illness.  *Id*.  Plaintiff stated that he had used a cane on and off since 1980.  He could walk without a cane but when he does, his low-back pain increased.  *Id*.  Plaintiff first injured his low back in 1980 while trying to lift a very heavy pipe.  In 1991, his low-back pain became constant and continuous.  (*PageID*# 452).  Plaintiff estimated that his back pain

6

was an eight, on a scale of one to ten.  He took Vicodin for pain as needed.  He previously used Oxycontin but could not afford it since losing his job in March 2009.  *Id*.

On examination, Plaintiff was 5 feet 7¼ inches tall and weighed 244 pounds.  Dr. Danopulos diagnosed Plaintiff with "exogenous versus morbid obesity." (*PageID*# 453, 455).  Dr. Danopulos observed that Plaintiff could move around the exam room freely and dress/undress normally.  *Id*.  He had a limping gait with a cane, positive straight-leg-raising test, and reduced range of motion in his dorsolumbar spine.  (*PageID*## 453-54, 458).  Dr. Danopulos noted that Plaintiff's spine was "painless" to pressure; his paravertebral muscles were also found to be soft and painless upon palpation and pressure.  (*Id.*).  Plaintiff could squat then stand, and he could walk normally with a heel-toe gait.  (*Id.*).  Dr. Danopulos found no evidence of atrophy, muscle spasm, joint abnormality, or edema.  (*PageID*# 456).  Dr. Danopulos noted that it is "peculiar" that Plaintiff was limited in his lumbar range of motion and could still perform heel and toe walking normally and painlessly.  (*PageID*# 454).

Dr. Danopulos diagnosed Plaintiff with early arthritic changes in the lumbar spine, obesity, and depression with anxiety.  According to Dr. Danopulos, Plaintiff's "ability to do any work-related activities is affected in a negative way from his lumbar spine arthritic changes which makes him to use a cane which is practically obligatory for long distance, but not for short distance." (*PageID*# 455).

The ALJ also afforded considerable weight to the opinions of the state agency

physicians who reviewed the records but did not examine Plaintiff. (*PageID* # 74). One such non-treating doctor, Anton Freihofner, MD, opined in January 2010 that Plaintiff could lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently; and stand and/or walk for six hours and sit for six hours in an eight-hour workday. (*PageID* # 478). Dr. Freihofner checked boxes on the form he completed indicating Plaintiff could frequently climb, stoop, or crouch and needed to avoid concentrated exposure to hazards such as machinery and heights. (*PageID* # 479, 481). Dr. Freihofner believed that Plaintiff's statements were partially credible. (*PageID* # 482). Dimitri Teague, MD, reviewed the record in July 2010 and concluded that Dr. Freihofner's assessment "can be affirmed as written." (*PageID* # 486).

As to his mental impairments, Ty Payne, Ph.D. interviewed and evaluated Plaintiff in August 2009 for the Ohio Bureau of Disability Determinations. (*PageID* ## 446-50). Plaintiff reported depression and felt that his memory had worsened. He also reported that he had undergone previous treatment for depression. Dr. Payne diagnosed Plaintiff with dysthymia.

Dr. Payne opined that Plaintiff's ability to relate to others, to concentrate and maintain attention, and to withstand pressures of daily work were mildly impaired. (*PageID* # 449). He could understand, recall, and follow through with moderately complex tasks, and he could deal with written instructions at a moderately complex level. His concentration and attention necessary for "normal employment" and his ability to

8

withstand the stress and pressure of daily work were "mildly impaired by his dysthymia." *Id*.

In September 2009, psychologist Paul Tangeman, Ph.D. reviewed the record and completed a psychiatric-review-technique form. (*PageID*## 460-73). He checked a box indicating that Plaintiff did not have a severe mental impairment. (*PageID*# 460). He recognized that Plaintiff had dysthymia and he checked boxes indicating that Plaintiff was mildly limited in his activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, and pace. (*PageID*## 463, 470). He also indicated that Plaintiff had no episodes of decompensation. (*PageID*# 470). Dr. Tangeman opined that Plaintiff's medically determinableness impairments were reasonably related to his alleged symptoms but the intensity of the symptoms and their impact on his functioning were not consistent with the medical and nonmedical evidence. By way of example, Dr. Tangeman explained that Plaintiff reported "decreased motivation, but he cooks dinner, completes [household] chores, and reads in his spare time." (*Page*# 472). Dr. Tangeman concluded that Plaintiff's statements were partially credible but that his "impairment is not severe." *Id*. Psychologist, Caroline Lewin, Ph.D., reviewed the record in July 2010 and noted that Dr. Tangeman's assessment "can be affirmed as written." (*PageID*# 485).

The record contains a diagnostic assessment and treatment notes from mental-health care Plaintiff received in August and September of 2009. (*PageID*# 490-516). His

9

initial diagnosis was major depression disorder, recurrent, moderate severity.  (*PageID#*

502).  Treatment notes reflect that Plaintiff reported experiencing severe back pain and

severe memory problems.  He was easily distracted and "very depressed about the whole

situation," most notably the fact that his "wife has cancer."  (*PageID#* 496). He was

observed to move around in his chair trying to get comfortable.  (*PageID#* 496).  Plaintiff

discontinued therapy after his fourth session.  His closing summary again documented his

diagnosis as major depression, recurrent, moderate severity.  (*PageID#* 490).

III.    **The Social Security Administration's Review**

The Social Security Act authorizes payment of Disability Insurance Benefits to

individuals who are under a "disability" who have met certain financial-contribution

requirements (through FICA[3] withholdings), among other eligibility requirements.  *See*

*Bowen v. City of New York*, 476 U.S 467, 470 (1986); *see also* 42 U.S.C. §423(a)(1)(D).

The term "disability" – as defined by the Social Security Act – has specialized meaning of

limited scope.  It encompasses only those who suffer from a medically determinable

physical or mental impairment severe enough to prevent them from engaging in

substantial gainful activity.  *See* 42 U.S.C. §423(d)(1)(A); *see also Bowen*, 476 U.S. at

469-70.

Social Security Regulations require ALJs to resolve a claimant's disability

applications under a five-Step sequential evaluation of the evidence.  *See* 20 C.F.R.

---

[3]  *See* Federal Income Contribution Act, 26 U.S.C. §3101.

§404.1520(a)(4); *see also Gayheart v. Comm'r of Social Sec.*, 710 F.3d 365, 374-375 (6th Cir. 2013).  Under the sequential evaluation, a dispositive finding at any Step terminates the ALJ's review.  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

In the first several Steps of the sequential evaluation, ALJ Armstrong found that (1) Plaintiff had not engaged in substantial gainful activity after his asserted disability onset date (March 15, 2009); (2) he had the severe impairments of degenerative disc disease and obesity; and (3) his impairments (alone or in combination) did not meet or equal an impairment described in the Listings.[4]  (*PageID* # 68-73).

ALJ Armstrong's dispositive conclusions occurred at Step 4 of the sequential evaluation.  ALJ Armstrong concluded that Plaintiff could perform his past relevant work as a customer service worker given his ability to engage in the full range of sedentary work.[5]  (*PageID* # 73-79).  This conclusion ended the ALJ's sequential evaluation because it led the ALJ to conclude that Plaintiff was not under a benefits-qualifying disability and, thus, not eligible to receive Disability Insurance Benefits.

IV.  **Judicial Review**

ALJ Armstrong's decision that Plaintiff is not under a benefits-qualifying disability is subject to review in this Court along two lines: "whether the ALJ applied the

---

[4] Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

[5] The Regulations define sedentary work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools..."  20 C.F.R. §404.1567(a).

11

correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Social Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see Bowen v. Comm'r. of Social Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).  Reviewing the ALJ's legal criteria for legal correctness may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Social Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746.

The substantial-evidence review does not ask whether the Court agrees or disagrees with the ALJ's factual findings or whether the administrative record contains evidence contrary to those factual findings.  *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Social. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'"  *Blakley*, 581 F.3d at 406 (quoting *Warner v. Comm'r of Social Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..."  *Rogers*, 486 F.3d at 241.

## V.    **Discussion**

### A.    **Medical Source Opinions**

Plaintiff challenges the ALJ's decision to accord little weight to the opinion of treating physician, Dr. Gardner, regarding the extent of his functional limitations, and

12

instead of favoring the opinions of the consultative examining physician, Dr. Danopulos, and state agency record-reviewing physicians, Dr. Freihofner and Dr. Teague.  Plaintiff also contends that the ALJ erred in failing to find that Plaintiff suffers from a severe mental impairment that would limit his ability to perform work activity.  (*Id.* at *PageID#* 572).

The Commissioner argues that ALJ Armstrong's decision is supported by substantial evidence.  More specifically, she explains that ALJ Armstrong appropriately considered all the medical evidence and incorporated the relevant limitations in his findings.  Further, the Commissioner contends that ALJ Armstrong properly rejected the opinion of Dr. Gardner, as it was not supported by the evidence in the record.

Social Security Regulations recognize that the applicant's treating physicians are, in general, "likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the applicant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. §404.1527(d)(2).  Generally, then, the Social Security Administration places more weight on the opinions provided by treating physicians than on the opinions of non-treating physicians.  20 C.F.R. §§404.1527(d)(1)-(2); *see Gayheart v. Comm'r Social Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).  To earn "controlling weight," and hence dispositive status, the treating physician's opinion must

13

be both well supported by medically acceptable data and not inconsistent with other

substantial evidence of record.  *Gayheart*, 710 F.3d at 376; *see Wilson v. Comm'r of

Social Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see* 20 C.F.R. §404.1527(d)(2).

> When the treating physician's opinion is not controlling, the ALJ, in
> determining how much weight is appropriate, must consider a host of
> factors, including the length, frequency, nature, and extent of the treatment
> relationship; the supportability and consistency of the physician's
> conclusions; the specialization of the physician; and any other relevant
> factors.  However, in all cases there remains a presumption, albeit a
> rebuttable one, that the opinion of a treating physician is entitled to great
> deference, its non-controlling status notwithstanding.

*Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citing, in part, Social

Security Ruling 96–2p, 1996 WL 374188 at *4).

In the event the ALJ decides to reject or discount a treating physician's opinion,

the ALJ must adhere to an additional procedural requirement by providing "good

reasons" for viewing unfavorably the treating physician's opinions.  *Rogers*, 486 F.3d at

242; *see* 20 C.F.R. §404.1527(d)(2).

> These reasons must be "supported by the evidence in the case record,
> and must be sufficiently specific to make clear to any subsequent reviewers
> the weight the adjudicator gave to the treating source's medical opinion and
> the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at
> *5 (July 2, 1996). This procedural requirement "ensures that the ALJ
> applies the treating physician rule and permits meaningful review of the
> ALJ's application of the rule."

*Gayheart*, 710 F.3d at 376 (quoting, in part, *Wilson*, 378 F.3d at 544).

Unlike treating physicians, "opinions from nontreating and nonexamining sources

are never assessed for 'controlling weight.'  The Commissioner instead weighs these

14

opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling.  Other facts 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id*. (citing 20 C.F.R. §404.1527(c)(6) (eff. April 1, 2012)).

The ALJ reviewed Dr. Gardner's opinions then afforded those opinions "little weight."  He first reasoned:

> [T]he determination of whether a claimant is disabled (or otherwise restricted in her ability to work) is reserved for the Commissioner of the Social Security Administration, not examining professionals.  Statements that a claimant is disabled or unable to work are not medical opinions but are dispositive administrative findings requiring familiarity with the Regulations and the legal standards set forth therein.  Such decisions are reserved to the Commissioner, who cannot abdicate his statutory responsibility to determine the ultimate issue of disability.

(*PageID* at 77).  This paragraph essentially reiterates a Regulation that characterizes the Social Security Administration's disability determination as an administrative finding, not a medical opinion. 20 C.F.R. §404.1527(e)(1). It also reflects the Regulation's explanation that a "statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. But, contrary to the ALJ's first reason for rejecting Dr. Gardner's opinions, this Regulation does not state that a treating source's opinion may be discounted or rejected merely because he or she states that the claimant is unable to work or disabled.  Similarly, the Regulation's list of factors (consistency, supportability, specialization, etc.) applicable to evaluating medical-

source opinions does not require or suggest that an ALJ may reject a medical opinion on specific work abilities (e.g., lifting, walking, sitting, getting along with others, etc.) simply because the medical professional also offered a conclusion about a claimant's disability status.  *See* 20 C.F.R. §404.1527(d)(1)-(6).  At best for the Commissioner, the Regulations allow an ALJ to consider "the amount of understanding of our [the Social Security Administration's] disability programs and their evidentiary requirements ...."  *Id*., §404.1527(d)(6).  Yet this is not what the ALJ did here.  Instead, the ALJ's first reason for placing little weight on Dr. Gardner's opinions was that Dr. Gardner offered the opinion that Plaintiff was unable to work.  (*PageID* at 77).  Facing a similar ALJ's decision, one Court of Appeals has explained the following:

> The [ALJ's] ground [for rejecting a treating source opinion] was that determining disability is reserved for the Commissioner of Social Security (by which the administrative law judge meant reserved to him). That isn't true. What is true is that whether the applicant is sufficiently disabled to qualify for social security disability benefits is a question of law that can't be answered by a physician. But the answer to the question depends on the applicant's physical and mental ability to work full time, and that is something to which medical testimony is relevant and if presented can't be ignored.

*Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013) (citing *Ferguson v. Social Security*, 628 F.3d 269, 272-73 (6th Cir. 2010) (other citation omitted)).  In *Ferguson*, the Sixth Circuit Court of Appeals explained, "even though some issues, such as whether an individual is 'disabled,' are case-dispositive administrative issues reserved to the Commissioner, 'adjudicators must always carefully consider medical source opinions

16

about any issue, including opinions about issues that are reserved to the Commissioner.'" 628 F.3d at 272 (quoting, in part, Social Security Ruling 96-5p, 1996 WL 374183 at *2 (July 2, 1996)). Thus, to the extent the ALJ gave little weight to the opinions of Dr. Gardner because he believed that Plaintiff was disabled or unable to work, the ALJ's analysis strayed too far from the applicable standards described in §404.1527(d)(1)-(6) and, in doing so, erred.

The ALJ's error does not by itself doom his decision because he provided additional reasons for discounting Dr. Gardner's opinions. The ALJ explained that Dr. Gardner's "conclusions go beyond what is established by the claimant's clinical evidence." (*PageID* at 77). The ALJ then explained, "Although Dr. Gardner references the claimant's physical and psychiatric impairments and symptoms (such as back pain, parasthesis, and impaired memory) to support his conclusion, the totality of the claimant's clinical evidence does not support Dr. Gardner's view of the claimant's level of functioning." (*PageID* at 77). This constitutes error because the Regulations do not require a treating medical source's opinion to be supported or consistent with <u>all</u> the medical evidence on file. The Regulations instead required the ALJ to consider the factors listed and described in 20 C.F.R. §404.1527(d)(1)-(6). In addition, a Social Security Ruling explaining how ALJs will evaluate treating medical-source opinions does not require or even suggest that ALJs should discount those opinions when the totality of medical evidence fails to support them. *See* Social Sec. Ruling 96-2P, 1996 WL 374188

17

(July 2, 1996).  What is required under the treating physician rule is that ALJs first consider whether "the opinion is well supported by medically acceptable clinical and not inconsistent with other substantial evidence in the case record."  20 C.F.R. § 404.1527(d)(2); *see Wilson*, 378 F.3d at 544.  If the treating physician's opinion meets this criteria, ALJs must give it "controlling weight; i.e., it must be adopted."  Social Sec. Ruling 96-2P, 1996 WL 374188 at *1; *see Gayheart*, 710 F.3d at 376; *see also Wilson*, 378 F.3d at 544.  While the ALJ reiterated this standard, he then specifically imposed his totality-of-clinical-evidence requirement, which finds no support in the Regulations.  *See* 20 C.F.R. §404.1527(d).  Moreover, "[f]or a medical opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques, it is not necessary that the opinion be fully supported by such evidence."  Soc. Sec. Ruling, 96-2p, 1996 WL 374188 at *2.  Although the ALJ next discussed the evidence he found inconsistent with Dr. Gardner's opinions, *see* PageID at 77-78, he did so while requiring the totality of the clinical evidence to be consistent with Dr. Gardner's opinion.  The ALJ therefore erred by imposing a totality-of-clinical-evidence requirement on Dr. Gardner's opinions.

The ALJ also rejected Dr. Gardner's opinions concerning Plaintiff's mental work limitations.  In doing so, the ALJ relied in part on the results of Plaintiff's nueropsychological evaluation at Wright State University over the course of four examinations from November 2010 to March 2011.  (*PageID*# 549-60).  The ALJ, however, focused only on certain results from those evaluations that he found inconsistent

with Dr. Gardner's opinions – namely, average to superior IQ-test results and average to superior scores in "verbal concept, verbal reasoning, verbal expression, non-verbal reasoning, visual-perceptual organization, visual problem solving, and non-verbal reasoning skills ...." (*PageID*# 78).  The ALJ's reliance on such information in these results creates two problems.  First, the ALJ overlooked or ignored the results of the Wright-State examination tending to show that Plaintiff had at least a severe mental impairment.  These results included diagnoses of "Cognitive Disorder Not Otherwise Specified[6]...; Major Depressive Disorder, Recurrent, Severe Without Psychotic Features...; [and] Panic Disorder with Agoraphobia." (*PageID*# 560).  The ALJ also overlooked that the Wright-State evaluation reported certain behavioral observations:

> He exhibited significant anxious (observed through nervous facial expressions and statements, increased respiration, and rapid tapping of leg and/or hand) and depressive (observed through morose, self-deprecating statements, dejected body language, and sad facial expressions) symptoms during tasks that tapped his memory skills....

(*PageID*# 552).  Perhaps more significantly, the report stated:

> Mr. Frew's test profile indicated numerous significant symptoms. He endorsed items associated with prominent levels of distress, dysphoria, and depression that are unusual even in clinical samples.  Individuals with similar profiles are often severely depressed, discouraged and withdrawn, and may experience thoughts of worthlessness, hopelessness, and personal failure.  Mr. Frew's test profile indicated that he may feel estranged from people around him, and may have few interpersonal relationships that can be described as close and warm.  Moreover, his response style suggested he might have difficulty interpreting the nuances of interpersonal behavior that

_____

[6]  Meaning, he has a cognitive disorder that is not otherwise specified in the <u>Diagnostic and Statistical Manual of Mental Disorders.</u>

> give meaning to personal relationships....  Individuals with test profiles similar to Mr. Frew's are likely to exhibit psychomotor slowing, disturbances in sleep patterns, loss of appetite and/or weight, and a decrease in level of energy and sexual interest....
>
> In comparison with other adults' test profiles, Mr. Frew's profile suggest that he experiences a significant degree of thinking and concentration difficulties.  It is likely that his thought processes are characterized by distractibility, confusion, and difficulty concentrating.  His test profile indicated that he may experience a degree of worry and anxiety that is so pronounced that his ability to concentrate is significantly compromised.....

(*PageID*# at 558).

These portions of the Wright-State evaluation describe the type of "signs and symptoms" that support the existence of a severe mental impairment, in contrast to the ALJ's omission of any severe mental impairment at Step two of his sequential evaluation. This is particularly so given the "*de minimis* hurdle" at Step two providing that "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).  These signs and symptoms, moreover, are the exact type of evidence applicable to determining whether a claimant has a severe mental impairment (Step two), or a mental impairment that meets or equals the criteria of the Listings (Step three), or a mental impairment that limits a claimant's mental work abilities (Step four).

> In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices ... in order to obtain objective clinical manifestations of mental illness....  [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of

professionals trained in the field of psychopathology.  The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)(quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987)) (other citation omitted).  It was therefore error for the ALJ to select information in the Wright-State evaluation that favored a non-disability finding or was inconsistent with Dr. Gardner's opinion without addressing or recognizing other information in the same evaluation that favored a disability finding or was consistent with Dr. Gardner's opinions.  *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000)("ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."); *see also Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984); *Kuleszo v. Barnhart*, 232 F.Supp.2d 44, 57 (S.D.N.Y. 2002).

This, moreover, exposes that substantial evidence does not support the ALJ's findings.  "[S]ubstantiality of evidence evaluation does not permit a selective reading of the record.  Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'"  *Brooks v. Comm'r of Social Sec.*, 531 Fed. App'x 636, 641 (6th Cir. 2013) (quoting, in part, *Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir. 1984)).

Accordingly, Plaintiff's Statement of Errors is well taken.

**B.     <u>Remand is Warranted</u>**

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the ALJ applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of §405(g) due to problems set forth above. On remand the ALJ should be directed to (1) evaluate all the medical source opinions of record and Plaintiff's credibility under the legal criteria applicable under the Commissioner's Regulations and Rulings and as mandated by case law; and (2) review Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether he was under a disability

22

and thus eligible for DIB.

Plaintiff points out that he submitted to the Appeals Council certain work records that the ALJ stated he needed – but did not give Plaintiff enough time to obtain – in order to evaluate his mental impairments.  The Commissioner contends that Plaintiff is not entitled to a remand under Sentence Six because he cannot show the additional evidence is both new and material.

The Commissioner's argument would be on point if the Court remanded the case for further proceedings under Sentence Six.  However, a remand under Sentence Four (not Sentence Six) for further proceedings is warranted in the event this Report and Recommendations is accepted because of the ALJ's errors discussed previously.  In this situation it is appropriate to enter a post-judgment remand in favor of Plaintiff.  A Sentence Four remand occurs "after a final decision by the district court reversing the denial of benefits by the Secretary in order to correct an error by the [Commissioner] in applying the regulations even if the rehearing to correct the error requires the taking of additional evidence." *Faucher*, 17 F.3d at 174 (citing *Sullivan v. Finkelstein*, 496 U.S. 617, 625-26, 110 S.Ct. 2658, 2664 (1990)).  Given that this case involves a Sentence Four remand, it is neither appropriate nor necessary to resolve whether Plaintiff's additional evidence is new and material (under Sentence Six), and the ALJ may consider Plaintiff's additional evidence upon a Sentence Four remand. *See id.*

## IT IS THEREFORE RECOMMENDED THAT:

1.      The Commissioner's non-disability finding be vacated;

2.      No finding be made as to whether Plaintiff Gary Frew was under a "disability" within the meaning of the Social Security Act;

3.      This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4.      The case be terminated on the docket of this Court.


April 1, 2014


                    s/Sharon L. Ovington
                    Sharon L. Ovington
                    Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).